# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CHARLES KESSLER, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v. } | **Case No.:  CV 03-P-1164-S** |
| } | |
| **THE CITY OF HOOVER, et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

Plaintiffs Charles Kessler and Nina Kessler filed this § 1983 and § 1985(3) action against the City of Hoover (the "City"); Barbara B. McCollum, Mayor of the City of Hoover (the "Mayor"); and Hoover City Council members Robert L. Austin, Donna Mazur and Kyle Forstman (collectively, the "Council Members").  In February 2003, the Hoover City Council voted to de-annex property owned by Plaintiff Nina Kessler, for whom Plaintiff Charles Kessler was an agent.  Plaintiffs allege that Defendants' actions violated their rights to equal protection and due process in violation of § 1983. Plaintiffs also allege that Defendants conspired to directly or indirectly deprive Plaintiffs of their rights to equal protection and due process in violation of § 1985(3).

On May 13, 2004, the court received a motion for summary judgment filed on behalf of "Defendants."  (Doc. # 24).[1]  Plaintiffs have also moved for summary judgment. (Doc. # 28). For the reasons outlined below, the court finds that genuine issues of material fact preclude summary judgment for either Plaintiffs or Defendants on the § 1983 claims, and the court denies the motions

---

[1] Although it is not clear from the motion which Defendants have moved for summary judgment, all but one of the Defendants -- Robert Austin -- are represented by the same attorney who filed the summary judgment papers.

as to those claims. However, the court finds that summary judgment for Defendants is due to be granted as to Plaintiffs' § 1985(3) claim.

## I.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met his burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

**II.     Undisputed Material Facts**

Nina Kessler is the sole owner of the realty that is the subject of this dispute (the "subject property"). (Doc. # 31, Ex. 12, at 38). The subject property is located appurtenant to the Cahaba River and is not contiguous to any land that lies within the city limits of Hoover. (Doc. # 27, Ex. 8, at 65-67; Ex. 7, at 140). The subject property was adjacent to property that is zoned residential. (Doc. # 31, Ex. 12, p. 76).

Nina Kessler appointed her husband, Plaintiff Charles Kessler, as her express agent to transact business related to the subject property. (Doc. # 31, Ex. 2; Doc. # 31, Ex. 10, at 12; Doc. # 31, Ex. 11, at 68-71, 92). Nina Kessler authorized Charles Kessler to act through Multi-Vest, Inc., an independent business of which Charles Kessler was the sole shareholder. (Doc. # 31, Ex. 11, at 71; Doc. # 31, Ex. 12, at 20-21). Charles Kessler was in charge of the development, building, and marketing of the subject property and had an expectation of deriving fees from his efforts. (Doc. # 31, Ex. 10, at 32).

On November 18, 2002, Multi-Vest, Inc. filed a City of Hoover Zoning Amendment Application seeking a change of the subject property's zoning from light industrial to that of residential garden homes. (Doc. # 31, Ex. 12, at Ex. 1).[2] When a zoning application is filed with the City Clerk, it is considered by the Hoover Planning & Zoning Commission (hereinafter the "Planning Commission")[3] and, if approved, is submitted to the City Council. (Doc. # 31, Ex. 12, at 73-74; Doc. # 31, Ex. 13, at 8-9, 16). At the request of the Planning Commission, Charles Kessler expended

---

[2] Kessler had previously submitted to the City an application for a building permit for the subject property. (Doc. # 31, Ex. 3).

[3] The Planning Commission is an independent board established by the Alabama legislature. (Doc. # 31, Ex. 12, at 22; Ala. Code § 11-52-1, *et seq.*).

thousands of dollars to conduct a traffic study regarding his zoning request for the subject property. (Doc. # 31, Ex. 7, at 16; Doc. # 31, Ex. 13, at 17).

At the same time that Plaintiffs' zoning request was pending before the Planning Commission, Charles Kessler had pending a separate annexation request before the City of Hoover Annexation Committee (hereinafter the "Committee") for the annexation of Shelby County property adjacent to the subject property. (Doc. # 31, Ex. 13, at 18, 22). Defendant Austin and Council Member Jack Wright were the sole members of the Committee, (Doc. # 31, Ex. 12, at 26-27), and they knew that Plaintiffs' zoning request was pending before the Planning Commission. (Doc. # 31, Ex. 13, at 15-16; Doc. # 31, Ex. 13, at 56). The Committee proposed to the City Council that the subject property be de-annexed, asked the City Council to vote on the de-annexation, and voted against the Plaintiffs' annexation request concerning the Shelby County property. (Doc. # 31, Ex. 12, at 59-61, 105; Doc. # 31, Ex. 13, at 19, 29).

Defendant Austin, a City Council member and Annexation Committee member, was also a member of the Planning Commission. (Doc. # 31, Ex. 12, at 18-19). The Planning Commission was advised to continue its hearing on Plaintiffs' zoning request until after the City Council voted on the de-annexation, because a vote to de-annex would preclude the Planning Commission from having to consider the zoning request. (Doc. # 31, Ex. 13, at 32). Although discussion of Plaintiffs' zoning request was set for discussion at both the December 2002 and January 2003 Planning Commission meetings, it was continued until February. (Doc. # 31, Ex. 5, ¶ 9; Doc. # 31, Ex. 6, ¶ 3, at 2).

Prior to Plaintiffs' attempts to re-zone the subject property, Defendant Mayor McCollum had publicly criticized Charles Kessler because she believed he had not talked to the City about annexing an unrelated development on Patton Chapel Road that was completely surrounded by the City. (Doc.

4

# 31, Ex. 14, at 50). The Mayor was "mad" at Charles Kessler because he hadn't explained his Patton Chapel Road plans to her, which she believed was not "courteous." (Doc. # 31, Ex. 14, at 53-54, 58).[4] She informed Defendant Austin of her criticisms of Charles Kessler's development of the Patton Chapel Road project. (Doc. # 31, Ex. 12, at 47). On January 22, 2003, the Birmingham News, in the "Hoover News" section, reported that the Mayor had called Charles Kessler "a very stubborn man" and "a bully" and said that he "owes the city something back for what he did up there." (Doc. # 31, Ex. 17).

On January 21, 2003, the City Council met to discuss the proposed de-annexation of the subject property. (Doc. # 31, Ex. 7, at 12, ¶ 23). Prior to the meeting, Defendant Austin had suggested to the Mayor that de-annexation would be an option for the subject property. (Plaintiff's Ex. 14, at 94-95). Defendant McCollum reviewed the request and decided to support the Council in de-annexation. (Doc. # 31, Ex. 14, at 134). Defendant Austin also told fellow Council Members/ Defendants Forstman and Mazur that he wanted to de-annex the subject property. (Doc. # 31, Ex. 12, at 111-112). Immediately prior to the meeting, the three Defendant Council Members agreed that the subject property should be de-annexed. (Doc. # 31, Ex. 15, at 21, 23, 44).

Plaintiffs did not receive written notice that the property was subject to being de-annexed. (Doc. # 31, Ex. 9, at 10). When informed at the January Council meeting that the City was considered de-annexation, Charles Kessler objected to it. (Doc. # 31, Ex. 7, at 16-17). A discussion ensued and one of the Council Members shared his belief that the proposed de-annexation would

---

[4] Charles Kessler was not required to have the City's approval to develop the Patton Chapel Road project because the property was not in the City. (Doc. # 31, Ex. 14, at 52-53) Despite some complaints, Charles Kessler was developing the Patton Chapel Road project in a manner that was not inconsistent with that of other developers. (Doc. # 31, Ex. 12, at 50-51).

treat Charles Kessler differently from other landowners in the area. (Doc. # 31, Ex. 7, at 24). Linda Harris, a private citizen, informed the Council that they were taking unprecedented, inconsistent action in regards to the de-annexation. (Doc. # 31, Ex. 7, at 17).  Another citizen cautioned the Council that they were circumventing the Planning and Zoning process by not allowing Charles Kessler to present his plan to the Planning Commission. (Doc. # 31, Ex. 7, at 23).

During the course of the meeting, Plaintiffs withdrew their zoning request. (Doc. # 31, Ex. 7, at 25). At the January meeting, a majority of the Council voted to continue discussion of de-annexation to the next scheduled Council meeting. (Doc. # 31, Ex. 7, at 26).

On January 22, 2003, Charles Kessler filed a letter with the Clerk of the City of Hoover advising that he was no longer pursuing a zoning change of the subject property. (Charles Kessler Dep., at Ex. 1). On February 3, 2003, the Council again met to discuss the de-annexation. (Doc. # 31, Ex. 9, ¶ 22, at 9-11).  At the February meeting, the Council voted to de-annex the subject property based on the votes supplied by Defendant Austin, Defendant Forstman, and Defendant Mazur, a majority of the Council. (Doc. # 31, Ex. 9, ¶ 22, at 11).

The Council had never before de-annexed land over the objection of the property owner. (Doc. # 31, Ex. 12, at 41-42; Doc. # 31, Ex. 13, at 41; Doc. # 31, Ex. 15, at 15; Doc. # 31, Ex. 16, at 110; Doc. # 31, Ex. 19, at 2).  Plaintiff maintains that Defendants de-annexed the subject property to inhibit future residential development on the property by Charles Kessler. (Doc. # 31, Ex. 15, at 122-123; Doc. # 31, Ex. 16, at 162, 164).  Defendant Robert Austin opined that the City could not achieve its goals by denying Charles Kessler's zoning application through the Planning Commission

process "[b]ecause he would have sued us, and he would have won." (Doc. # 31, Ex. 12, at 76).[5]

At the time of the de-annexation, the subject property was zoned industrial and there were no houses on it. (Doc. # 31, Ex. 12, at 69). The subject property was adjacent to property that was already zoned residential. (Doc. # 31, Ex. 12, at 76). When the Defendants made the decision to de-annex, Plaintiffs were paying taxes on the subject property which benefitted the City. (Doc. # 31, Ex. 13, at 56-57; Doc. # 31, Ex. 15, at 28, 150; Doc. # 31, Ex. 16, at 150).

## III.   Discussion[6]

### A.   Qualified Immunity and the § 1983 Claims[7]

---

[5] Plaintiffs point out that the subject property is the only property in the City to be de-annexed based on the perceived intent as to the owner's future use of the property, (Doc. # 31, Ex. 16, at 168-169), and the only property in the City to be de-annexed based on a suggestion that the City might be sued as a result of a zoning issue. (Doc. # 31, Ex. 12, at 85). These facts remain uncontroverted by Defendants.

[6] The court recognizes Defendants' argument that Plaintiff Charles Kessler has no standing to bring this lawsuit because he was not the owner of the subject property. The undisputed facts indicate that Nina Kessler appointed her husband, Charles Kessler, as her express agent to transact business related to the subject property. (Doc. # 31, Ex. 2; Ex. 10, p. 12; Ex. 11, pp. 68-71, 92). The agency relationship also authorized Charles Kessler to act through Multi-Vest, Inc.: "[I]f he wants to do it under Multi-Vest, that would be up to him. .... I authorized him to do whatever he wanted to do, yes." (Doc. # 31, Ex. 11, p. 71). Because Charles Kessler is a developer who planned to develop the subject property, such development was meant to further his independent economic interests as well as those of his wife. The law is clear that an agent has standing when his own interests are involved. *See, e.g., Lubbuck Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250 (5th Cir. 1980) (finding that an agent who has an interest in the subject matter of a contract made by him on behalf of his principal may bring suit on such contract on his own name); *Joe Cooper & Associates, Inc. v. Central Life Assur. Co.*, 614 So.2d 982 (Ala. 1992) (holding that an agent can bring an action in his own name for the tort by a third party against a principal if the third party's actions were intended for the purpose of harming the agent's interests). The court finds that Plaintiff Charles Kessler has standing because his claims are personal, particularized, concrete and otherwise judicially cognizable.

[7] "[T]he doctrine of qualified immunity is not applicable in cases brought under Section 1985(3)." *Burrell v. Bd. of Trustees of Ga. Military College*, 970 F.2d 785, 794 (11th Cir. 1992).

The court has carefully reviewed the Rule 56 file in this case and finds that there are genuine issues of material fact that require the court to deny the motions for summary judgment filed by both Defendants and Plaintiffs as they relate to the § 1983 claims. Simply stated, Plaintiff has adduced sufficient evidence from which a reasonable jury could conclude that Defendants violated Plaintiffs' right to equal protection by singling them out for disparate treatment for reasons that are irrational and arbitrary, *see Village of Willowbook v. Olech*, 528 U.S. 562 (2000), and that Defendants violated Plaintiffs' right to due process by failing to provide notice reasonably calculated to inform Plaintiffs that de-annexation was being considered, *see Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Because the defense of qualified immunity has been raised, however, the court believes it is important to explain its reasoning in more detail.

For individual defendants, qualified immunity utilizes an "objective reasonableness standard, giving a government agent the benefit of the doubt unless [his] actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them." *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998). The Eleventh Circuit has cautioned that, "[b]ecause qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir.1994); *see also United States Department of State v. Ray,* 502 U.S. 164, 179 (1991) ("We generally accord . . . official conduct a presumption of legitimacy.").

Under the qualified immunity doctrine, government officials performing discretionary functions are immune from suit unless the alleged conduct violates "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818, (1982).  "Clearly established" rights must be "developed . . . in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violate federal law."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this Circuit.  *Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003).  However, "fact-specific precedents are not always needed to overcome qualified immunity."  *Vinyard v. Wilson*, 311 F.3d 1340, 1355 (11th Cir. 2002).  In the absence of fact-specific precedent, the court must determine whether the individual Defendants' conduct "lies so obviously at the very core" of what the equal protection and due process clauses prohibit "that the unlawfulness of the conduct was readily apparent to [them], notwithstanding the lack of fact-specific case law."  *Lee v. Ferraro*,  284 F.3d 1188, 1199 (11th Cir. 2002) (internal quotation marks omitted).

At the time of the de-annexation decision, clearly established law provided that Defendants' alleged conduct was prohibited.  With respect to Plaintiffs' equal protection claim, the United States Supreme Court has clearly established that intentionally singling out an individual for disparate treatment violates the Equal Protection Clause.[8]  *Village of Willowbrook v. Olech*,  120 S.Ct 1073,

---

[8]Defendants have brought to the court's attention Ala. Code § 11-42-200 which provides as follows:

> Whenever in the opinion of the council or governing body of any city or town the public health or public good requires that the corporate limits of such town or city be reduced and the boundaries thereof reestablished, said council shall pass a resolution defining the proposed corporate limits.

This statute authorizes a city council to reduce its corporate limits if, in its opinion, the city's public health or public good require that action.  At this stage in the case, however, Defendants have made no real argument that their reason for de-annexing the subject property was one consistent with § 11-42-200, as opposed to some other improper reason.  At the very least, there is a material issue of fact

9

1074-75 (2000). In *Olech*, the Court recognized equal protection claims brought on behalf of a "class of one:"

> Our cases have recognized successful equal protection claims brought by a "class of one" where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. In so doing, we have explained that "[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute of by its improper execution through duly constituted agents."

*Olech*, 120 S.Ct. at 1074. It is well-established in the Eleventh Circuit that individuals who are treated differently from other similarly situated individuals with respect to zoning and de-annexation have a claim for violation of equal protection. *See Executive 100, Inc., v. Martin County*, 922 F.2d 1536 (11th Cir. 1991) (holding that landowners who alleged the county board treated them differently than other similarly situated landowners without any reasonable basis when denying their request for rezoning stated an equal protection claim); *Burton v. City of Belle Glade*, 178 F.3d 1175 (11th Cir. 1999) (holding that an equal protection claim could be established by proof that the city had a discriminatory purpose in failing to annex property on which a housing project was located).

Likewise, that Defendants' conduct could constitute a violation of due process was also clearly established at the time of the de-annexation decision. *See Wheeler v. City of Pleasant Grove*, 664 F.2d 99 (5th Cir.1981) (finding that, where property owners had a zoning right to build an apartment complex, but a new ordinance was passed which forbade construction of the new apartments, the ordinance was arbitrary and capricious and violated due process); *Reserve, Ltd. v. Town of Longboat Key*, 17 F.3d 1374 (11th Cir. 1994) (finding that a developer had a due process

---

as to why Defendants de-annexed the property that precludes the granting of their motion.

property interest in a building permit after the developer expended large sums of money in reliance on the building permit to acquire acreage, design complex, demolish preexisting buildings on the site, work on the site, and begin construction). The court finds that "the state of the law ... gave [the Defendants] fair warning that their alleged treatment of [Plaintiffs] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 740 (2002).

Looking at the record in the light most favorable to Plaintiffs, a reasonable jury could find that Defendants acted with personal animosity and vindictiveness, and without a rational basis or due process, when they de-annexed Plaintiffs' property and denied Plaintiffs' zoning request. "Given the significance of the disputed issues of fact here, qualified immunity from suit is effectively unavailable, even though after a full trial the [Defendants] may yet prevail on the merits." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). Therefore, the defense of qualified immunity fails as to Plaintiff's equal protection and due process claims under § 1983 and summary judgment for Defendants on these claims is due to be denied.

      **B.**      **Section 1985(3) Claims**

The elements of a cause of action under § 1985(3) are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Lucero v. Operation Rescue*, 954 F.2d 624, 627 (11th Cir.1992). The court finds that Plaintiffs' conspiracy claim fails under the intracorporate conspiracy doctrine.

"The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc). The doctrine applies to public entities such as the City and its personnel. *Denney v. City of Albany,* 247 F.3d 1172, 1190-91 (11th Cir. 2001); *see also Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 768 (11th Cir.2000) (rejecting employee's § 1985(3) claim on that basis where employee alleged civil conspiracy among solely County employees); *Chambliss v. Foote*, 562 F.2d 1015 (5th Cir.1977), (applying intracorporate conspiracy doctrine to shield the public university from § 1985(3) liability in a civil conspiracy claim).

Here, the only conspirators identified by Plaintiffs -- the Mayor and the Council Members -- are all City employees; no outsiders are alleged to be involved. The alleged subject of their conspiracy-- the de-annexation of the subject property -- relates to their performance of their official, not personal, duties. Accordingly, because the Mayor and the Council Members were all effectively acting as the City itself when they entered into their allegedly illegal agreement, there can be no claim against them under § 1985. *See Denney,* 247 F.3d 1172 at 1191. Accordingly, the court grants Defendants' motion for summary judgment as it relates to the Plaintiffs' § 1985(3) conspiracy claim.[9]

---

[9] The court held a telephone conference in this case on November 9, 2004 and informed the parties of its intended rulings on the motions for summary judgment. Upon hearing the court's ruling on the § 1985(3) claim as it relates to the Defendants who have moved for summary judgment in this case, the Plaintiffs agreed to dispense with formalities and allow the court to also grant summary judgment as to Defendant Austin, who is proceeding pro se and did not separately move for summary

**IV.    Conclusion**

For the reasons stated above, Defendants' Motion for Summary Judgment is **DENIED in part** and **GRANTED in part**.  Plaintiffs' Motion for Summary Judgment is **DENIED**.

**DONE** and **ORDERED** this ___16th___ day of November, 2004.

                                               _____
                                               **R. DAVID PROCTOR**
                                               UNITED STATES DISTRICT JUDGE

---

judgment.